## BUCKLEY v. MOHR.

### L. A. No. 570; September 8, 1899.

#### 58 Pac. 261.

**Boundaries—Maps of Different Additions to City.**—Where plaintiff in ejectment claims land under the official map of a certain addition to a city, and defendant claims under the official map of an adjoining addition, and it is stipulated that the map under which defendant claims is the official map of that addition, and that under it defendant has shown title to the land in controversy, and the evidence shows that such map is the one under which both parties have acted, it will be considered as the controlling map by which to locate the line between the two additions.

**Adverse Possession.**—Where Plaintiff in Ejectment Claims the West twenty-five feet of a certain lot on which a building is located, and the land in controversy consists of a certain number of feet off the east side of said strip of twenty-five feet, and the evidence shows that plaintiff and her grantors supposed they had located the building as far east as they claimed possession, and made no claim of possession to any land east of the building until after defendant inclosed the same, plaintiff cannot claim constructive adverse possession to the land east of said building.

APPEAL from Superior Court, San Diego County.

Ejectment by Mary Buckley against William Mohr. From a judgment in favor of defendant and an order denying motion for new trial plaintiff appeals. Affirmed.

Withington & Carter for appellant; A. C. Mouser for respondent.

CHIPMAN, C.—Ejectment. Defendant had judgment, from which, and from the order denying motion for new trial, plaintiff appeals. Block K of Horton's addition to the city of San Diego is fractional, and its west boundary line is the east boundary line of fractional block 2 of Middletown, the two fractional blocks extending from Front street on the east to Union street on the west, forming one entire block, being bounded as shown above on the east and west, on the south by C street, and on the north by B street. Plaintiff claims by a deed made to her in 1886, describing her land as follows: "Beginning at the southwest corner of block K, Horton's addition, thence easterly twenty-five feet, thence northerly one hundred feet, thence westerly twenty-five feet, thence southerly one hundred feet to beginning; being the same land previously conveyed to plaintiff's grantor by the San Diego and Los Angeles R. R. Co." It is otherwise known as the west twenty-five feet off lots G and H of Horton's addition. Defendant claims the east ninety-two feet of said lot G through conveyance which described a piece of land beginning at the southeast corner of said block K; thence northerly along Front street fifty feet; thence at right angles west to the west line of the block, which line divides this block and block 2 of Middletown; thence south along this line to C street; thence along C street one hundred and seventeen feet to the beginning, "excepting a strip off the west end of above tract of twenty-five feet wide from east to west on said C street by fifty feet long from north to south, deeded to the Texas Pacific Railway Company August 5, 1873." This excepted piece is the same as described in the complaint. When plaintiff's grantor bought the property, in 1886, he built a laundry upon it, which was then, and ever since has been, rented and used for laundry purposes. The building fronts twenty-two feet and three inches on C street, and extends back about fifty feet, and plaintiff's evidence tends to show that it was the intention of plaintiff's grantor to build the house entirely on the west twenty-five feet of lot G, with a space for a drainage sewer on the west side of the house to C street. Plaintiff made no use of any of the land lying along the east side of this laundry building, and no door opened on that side, but a door opened on the west side. In 1896 defendant inclosed his part of lot G with a fence, including in his inclosure all the land within six inches of the laundry.

Defendant claims that lot G runs back from Front street to the dividing line between block K of Horton's addition and block 2 of Middletown, one hundred and seventeen feet, according to Lockling's map of Horton's addition, and that his part of the lot is the east ninety-two feet, while he concedes that plaintiff's deed calls for the west twenty-five feet of the lot, to which defendant makes no claim. Plaintiff claims according to the Jackson map of Middletown, which gives eighty-seven feet as the width of block 2, and would locate the dividing line between the two blocks three feet six inches farther east than by Lockling's map of Horton's addition, and would reduce the length of lot G to one hundred and thirteen feet and four inches; and, as defendant concedes to plaintiff twenty-five feet off the west side of this lot, the Jackson map, if the true survey, would reduce defendant's lot from ninety-two feet to eighty-three feet and four inches, and would show defendant to be a trespasser. It was stipulated at the trial by the parties that Lockling's map of Horton's addition is the official map, and was filed June 21, 1871, "and that the south line of said fractional block K, in said addition, is marked thereon one hundred and seventeen feet long, and that said south line of said fractional block K is the south line of said lot G therein; that said map shows that Horton's addition has in it over four hundred blocks, each divided into twelve lots, designated by the letters A to L, and that the west half of each block is lettered A to F from north to south, and the east half G to L from south to north; that the Jackson map of Middletown is the official map of Middletown, and was filed October 19, 1874." It was stipulated that defendant showed valid title to the realty east of the property named in the complaint, by a description which, among others, describes lot G as running on C street one hundred and seventeen feet from the line dividing Horton's addition and Middletown.

It seems to me that the pivotal question is as to which of these two maps should prevail. A subordinate question is whether the occupation by the laundry building carried with it title by adverse possession to any land east of that building. That the Lockling map should prevail over the Jackson map seems quite clear from the evidence. The Middletown reservation comprised some six hundred and thirty-seven acres, more or less, having a frontage "along the line of low-

water mark on the bay of San Diego, and nineteen hundred and eighty feet easterly is the dividing line between Middletown and Horton's addition, running parallel with said low-water mark on said bay of San Diego." This Middletown reservation was partitioned by decree of court, and the map thereof is what is known as the "Jackson Map," which was filed October 19, 1874. There is no evidence that any of defendant's predecessors in interest were parties to that partition suit, or that it involved any of the other lands of the city of San Diego. It appears, however, that the remainder of the city's lands were surveyed and platted by Charles H. Poole, and divided in pueblo lots of one hundred and sixty acres each, and were so designated on the official map thereof by Poole in 1856; and on May 11, 1867, the city conveyed to Horton certain six of these pueblo lots as designated on the map of 1856 (among which was the lot in which block K is situated), and these pueblo lots were subsequently subdivided by Horton, and the official map thereof duly filed June 21, 1871. The deed under which plaintiff claims begins its description at the southwest corner of block K of Horton's addition, and the evidence is that plaintiff's part of lot G has generally been described as the west twenty-five feet of lot G of Horton's addition. We think the evidence, stipulated and otherwise, sufficiently establishes the fact that the Lockling map of Horton's addition, and not the Jackson map, has been the one upon which all the parties have acted. And, as it is stipulated that lot G has a depth of one hundred and seventeen feet east and west from Front street, it seems quite plain that, so far as the conveyances should control, defendant has a clear right to the land he has inclosed, and he claims no more. We do not wish to be understood as deciding for all purposes, and in all cases which may hereafter arise, that the dividing line between block K of Horton's addition and block 2 of Middletown must be located by the Lockling map. We only decide that in the case here it must be so done, upon the evidence before us.

But plaintiff claims that, if it be that she has failed to prove perfect title by deed, she yet has proved title by adverse possession. The evidence is that her grantor took possession of what he supposed was the west twenty-five feet of lot G as laid down on the Lockling map of Horton's addition. He built upon that assumption, and the house is where it was

placed in 1886. Plaintiff's witness testified: "Before I obtained any interest in this property, in 1886—possibly in 1885 —I went to it with Santee [his grantor], who showed me this twenty-five feet on C street. He pointed it out, and located it where we built the laundry, which has been occupied, ever since we built it, as a laundry. We built a sewer, at great expense, on the west side of this twenty-five feet. It was not put on the line, but on this twenty-five feet." Again he testified: "We had a map there, and he showed me the west line of the twenty-five feet from the map, . . . . and he indicated to me the fact that we had twenty-five feet off the west end of lots G and H of fractional block K. . . . . I do not remember how much of our twenty-five feet we left on the east side of the laundry, nor how much on the west side. There was never any fence on either side of the laundry, that I know of. There was nothing there but the laundry. Before we put the wash-house there, we measured off our twenty-five feet. Then the sewer was expensive, and we aimed to be right about it, so we had a survey made. We had someone make a survey before we put the sewer in, and we put it on the westerly part of our twenty-five feet. We did not aim to put it on any line. We aimed to get it inside of our own domain." For purposes of taxation this piece was variously described. Plaintiff's agent since 1889 testified that it has been generally described as the "west twenty-five feet of lot G." It seems to me that the evidence warrants the inference that plaintiff and her grantors supposed they had located the laundry as far east on the lot as they claimed possession. The building is stated by one witness to be twenty-three feet and three inches, and by another witness twenty-two feet and three inches, wide. The latter of these measurements would leave but two feet nine inches for the sewer, which was built west of the house, and within the twenty-five feet claimed; there was a door leading out to the west, but no door or entrance from the east. The evidence tends strongly to show that no claim of possession or right of possession was set up by plaintiff or her grantor to any land east of the laundry. We do not see how the doctrine relied upon by plaintiff, as to constructive possession of a large tract while in actual possession of only a portion, can apply, for the evidence shows that the entry was upon the whole tract called for by plaintiff's deed, as the claimants

understood their rights. They never occupied or made claim to any land east of the building until after defendant built his fence. Plaintiff's adverse possession was of the 'west twenty-five feet of the one hundred and seventeen feet of lot G of Horton's addition, and we do not see how she can claim constructive adverse possession beyond this, in view of the evidence in the case. How far in the other direction her adverse possession may be maintained, in order to give her the full twenty-five feet front on C street, it is not our intention to intimate. All that is intended to be decided is that the evidence fails to support her claim to the land she now seeks to recover, and we therefore advise that the judgment and order be affirmed.

We concur: Haynes, C.; Gray, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.